UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **JOHN A. IRVINE,** *et al*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Case No. 4:08-cv-2568** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

---

## MEMORANDUM AND ORDER

---

This is an action for refund of income taxes and interest brought by Plaintiffs John

A. Irvine and Linda M. Irvine (the "Irvines"), Billy J. White and Ina J. White (the

"Whites"), and Kenneth L. Kraemer. The Irvines seek a refund of taxes for the year 1985

in the amount of $66,591.70, plus interest, attorneys' fees, and costs. The Whites seek a

refund of taxes for the years 1984 and 1985 in the total amount of $149,638.27, plus

interest, attorneys' fees, and costs. Mr. Kraemer seeks a refund of taxes for the year 1986

in the amount of $19,385.51, plus interest, attorneys' fees, and costs.

Pending before the Court are three motions for summary judgment, one filed by

Defendant the United States of America ("Defendant," the "United States," or the

"government"), and two filed by Plaintiffs. After considering these motions, all responses

and replies thereto, and the applicable law, the Court finds that Defendant's Motion for

Summary Judgment (Doc. No. 19) must be GRANTED IN PART and DENIED IN

PART. Plaintiffs' Motion for Summary Judgment Based on Penalty Interest (Doc. No.

21) must be GRANTED. Plaintiffs' Motion for Summary Judgment Based on Untimely Assessment (Doc. No. 22) must be DENIED.

## I.     BACKGROUND

This case involves refunds of federal income tax and interest for tax years 1984, 1985, and 1986. Plaintiffs assert two independent bases for refunds: (1) as to Plaintiffs Irvine and White, Plaintiffs claim that the IRS assessed after limitations expired, entitling Plaintiffs Irvine and White to a refund; (2) as to all Plaintiffs, Plaintiffs contend that the IRS assessed the penalty rate of interest in contravention of the applicable statute and regulations. In examining the relevant background, the Court first considers the statutory framework that applies in this case, and then briefly summarizes the factual background on which Plaintiffs' claims are based.

### A.  Statutory Framework

The Internal Revenue Code (the "Code") defines a partnership as "a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business . . . is carried on, and which is not . . . a corporation or a trust or estate." 26 U.S.C. § 761(a). For tax purposes, then, a "partnership" is an entity that must file informational tax returns, but that is not itself subject to federal income taxes. 26 U.S.C. § 701.  "Instead, a partnership is treated as a conduit through which income passes to its partners, who are responsible for reporting their pro rata share of tax on their individual income tax returns." *Duffie v. United States*, 600 F.3d 362, 365 (5th Cir. 2010).

In 1982, Congress passed the Tax Equity and Fiscal Responsibility Act ("TEFRA"), Pub. L. No. 97-248, to consolidate partnership-level audit and adjustment

procedures. TEFRA established and defined three categories of "items," which encompass the things that need to be taken into account when determining the tax treatment of a partnership: (1) a partnership item, defined as "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level," 26 U.S.C. § 6231(a)(3);  (2) a nonpartnership item, defined as "an item which is (or is treated as) not a partnership item," 26 U.S.C. § 6231(a)(4); and (3) an affected item, defined as "any item to the extent such item is affected by a partnership item," 26 U.S.C. § 6231(a)(5). Partnership items, generally, are items "more appropriately determined at the partnership level," including the gains, losses, deductions, and credits of a partnership. 26 C.F.R. § 301.6231(a)(3)-1(a). The term "partnership item" also "includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." 26 C.F.R. § 301.6231(a)(3)-1(b). In contrast, "[t]he tax treatment of nonpartnership items requires partner-specific determinations that must be made at the individual partner level." *Duffie*, 600 F.3d at 365-66 (citing *Crnkovich v. United States*, 202 F.3d 1325, 1328-29 (Fed. Cir. 2000)).

Generally, TEFRA consolidates partnership-level audit and adjustment procedures by mandating that "the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level." 26 U.S.C. § 6221. TEFRA allows the IRS to adjust partnership items first at a singular proceeding,

and then to "subsequently assess all of the partners based upon the adjustment of that particular item." *Duffie*, 600 F.3d at 365 (quoting *Prati v. United States*, 81 Fed. Cl. 422, 427 (Fed. Cl. 2008)) (internal quotation marks omitted). Under TEFRA, the IRS does not have to conduct individual 'partner level' proceedings for each member of a partnership. *Id.*

If the IRS decides to adjust a partnership item on a partnership's informational income tax return, it must notify the individual partners of the adjustment by issuing a Notice of Final Partnership Administrative Adjustment ("FPAA"). 26 U.S.C. § 6223; *see also Duffie*, 600 F.3d at 366. "A Notice of FPAA sets out the proposed adjustments, e.g. disallowing all or part of [a] partnership's deductions, and lists the grounds for the adjustments." *Duffie*, 600 F.3d at 366 (citing 26 U.S.C. § 6223). After the Notice of FPAA is issued, the Tax Matters Partner ("TMP") has ninety days to challenge the proposed adjustments.[1] If the TMP does not challenge the proposed adjustments within 90 days, the other partners then have sixty days to file a petition for readjustment. 26 U.S.C. § 6226(b)(1). In an action challenging the proposed adjustments of a partnership, each partner is treated as a party to the action. 26 U.S.C. § 6226(c)(1).

The IRS may settle with individual partners, which then bars those settling partners from participating in the partnership-level suit. *Duffie*, 600 F.3d at 367 (citing 26 U.S.C. § 6228(a)(4), § 6226(c)(1)). Once the IRS settles with one partner, all other partners are entitled to a consistent settlement as to the settled partnership items. 26 U.S.C. § 6224(c)(2).

---

[1] The TMP "is the partner designated to act as a liaison between the partnership and the IRS in administrative proceedings and as the representative of the partnership in judicial proceedings." *Duffie*, 600 F.3d at 367 n.1.

"In a partnership-level proceeding, the Tax Court has jurisdiction to determine all partnership items for the tax year to which the FPAA relates." *Duffie*, 600 F.3d at 367. For all of the relevant tax years in this case, the Tax Court did not have jurisdiction over nonpartnership items or over affected items. *Id.* (citing 26 U.S.C. § 6226(f)). In a partner-level refund action, courts do not have jurisdiction over partnership items. 26 U.S.C. § 7422(h). However, items that were converted from partnership items to nonpartnership items through settlement with the IRS are within a court's jurisdiction. 26 U.S.C. § 6231(b)(1)(C); *see also Duffie*, 600 F.3d at 367.

### B.  Factual Background[2]

The disputes in this case relate to a number of limited partnerships managed by American Agri-Corp ("AMCOR"). In the early 1980s, AMCOR acted as general partner to a number of limited partnerships. Plaintiffs in this case each invested as limited partners in at least one of the AMCOR partnerships: John Irvine ("Irvine") invested in Agri-Venture Fund (AVF) in 1985 (*see* Limited Partnership Agreement of AVF at 28, Doc. No. 19-3); Kenneth Kraemer ("Kraemer") invested in Rancho California Partners-II (RCP2) in 1986 (*see* Pl. Compl. ¶ 19, Doc. No. 1); and Billy White ("White") invested in Texas Farm Ventures (TFV) in 1984 and in Houston Farm Associates II (HFA2) in 1985 (*see* Pl. Compl. ¶¶ 29, 40).[3]

In 1987, the IRS began civil examinations of some AMCOR partnerships, *Crop Associations-1986 v. C.I.R.*, 113 T.C. 198, 2000WL 976792, at *4-5 (1999), including ACF, HFA2, RCP2, and TFV. In 1990 and 1991, the IRS issued FPAA notices for AVF, HFA2, RCP2, and TFV, the partnerships at issue in this case. These FPAAs proposed to

---

[2] The facts provided herein are drawn from the record, and are undisputed unless otherwise noted.
[3] Plaintiffs Lynda Irvine and Ina White are parties to this suit only because they filed joint tax returns with their husbands, Plaintiffs John Irvine and Billy White. *See* 26 U.S.C. § 6013(d)(3).

disallow each partnership's farming expenses, as well as other deductions, on a number of grounds. The TMPs for the partnerships did not challenge the FPAAs, so, to avoid default, other partners filed separate, partnership-level suits in the Tax Court under Section 6226(b). These suits (collectively, the "Tax Court Suits") are as follows:

- *Agri-Venture Fund v. C.I.R.* (Tax Ct. 15034-91) (the AVF Suit);

- *Houston Farm Associates-II v. C.I.R.* (Tax Ct. 15041-91) (the HFA2 Suit);

- *Rancho California Partners-II v. C.I.R.* (Tax Ct. 12535-90) (the RCP2 Suit); and

- *Texas Farm Ventures v. C.I.R.* (Tax Ct. 15058-91) (the TFV Suit).

(App: 125, 152, 172, 194).

In 1996, the IRS began soliciting settlements of partnership items from AMCOR partners on Forms 870-P(AD). The IRS represented to these partners that, by settling, the partners "would avoid further litigation and penalties in regard to this tax year." (Def. App'x at 138, 160, 179; Doc. Nos. 19-6, 19-7.) The IRS also represented that, for those partners choosing not to settle, the Tax Court Suits would resolve only the partnership items for the applicable tax years. (*Id.*)  In 1999 and 2000, Plaintiffs settled with the IRS on Forms 870-P(AD), agreeing, as applicable, that 50% or more of each partnership's original partnership-item deductions were correct as originally reported. (Def. App'x at 14, 37-38, 77-78, 100-01, 129-30; Doc. Nos. 19-2, 19-3, 19-4, 19-6.) The Forms 870-P(AD) were essentially identical across the AMCOR partnerships, varying only in the dollar amounts of the adjustments. The IRS assessed the applicable taxes and interest, assessing interest at the penalty rate provided in Section 6621(c).[4]

---

[4] Based on the Forms 870-P(AD), the IRS assessed the following:

| Taxpayer | Tax Year | Assessment Date | Tax | Interest |
|----------|----------|-----------------|-----|----------|
| Irvine | 1985 | December 27, 1999 | $14,159.00 | $55,459.64 |
| Kraemer | 1986 | February 12, 2001 | $9,817.00 | $31,292.40 |

In 1999, the TMPs intervened in the suits. On July 19, 2001, after the IRS had assessed against Plaintiffs based on their Forms 870-P(AD), stipulated decisions were entered in each of the Tax Court Suits on terms different from those obtained by the partners who settled on Forms 870-P(AD) for the same partnerships. Irvine paid the assessments made against him in full beginning May 8, 2000, and filed his Forms 1040X and 843 claim for refund on May 7, 2002. Kraemer paid the assessments in full effective February 21, 2001 and filed his Form 843 claim for refund on February 11, 2003. White paid the assessments in full beginning February 21, 2000, and filed his Forms 1040X and 843 claim for refund on February 12, 2002. The IRS did not act on any of Plaintiffs' refund claims. Plaintiffs filed this consolidated refund suit on August 21, 2008. (Pl. Compl.)

Plaintiffs' first claim, brought by Plaintiffs Irvine and White, is that the tax assessments against these Plaintiffs are barred by the statute of limitations set forth in Section 6501(a) of the Internal Revenue Code of 1986 (the "Code"). The second claim, brought by all Plaintiffs, is that the penalties assessed them pursuant to Section 6621(c) were improper and must be refunded. (Irvine and White bring this second claim in the alternative, urging that, even if their statute of limitations argument does not bar the assessment and collection of tax, they are not liable for the penalty portion of the interest paid under Section 6621(c)). The parties have filed cross-motions for summary judgment on these two claims.

## II.    ANALYsIS

| White | 1984 | February 21, 2000 | $14,397.00 | $60,087.69 |
| White | 1985 | February 21, 2000 | $16,812.00 | $59,295.34 |

### A. Cross-Motions for Summary Judgment Regarding Untimely Assessment under 26 U.S.C. § 6501(a)

Plaintiffs Irvine and White move for summary judgment on their statute of limitations claim, urging the Court to find that the United States' tax and interest assessments against them are barred by the three year statue of limitations set forth in Section 6501(a). 26 U.S.C. § 6501(a). Irvine filed his 1985 return in 1987, and the IRS did not assess until 1999, twelve years later. White filed his 1984 and 1985 returns in 1985 and 1986, respectively; the IRS assessed in 2000, nearly fourteen years later. Plaintiffs Irvine and White contend, based on these facts, that the IRS assessed beyond the statute of limitations, entitling Irvine and White to a refund. The United States moves for summary judgment on this issue, as well, urging that this Court does not have subject matter jurisdiction over Plaintiffs' claim, and that, even if it did, the assessment of tax and interest against Plaintiffs was not barred by the statute of limitations.

District courts generally have jurisdiction over a taxpayer's refund action. 28 U.S.C. §§ 1340, 1346(a)(1); *see also Matthews v. United States*, 2010 WL 2305750, at *4 (S.D. Tex. June 8, 2010), *aff'd sub nom. Scott v. United States*, 2011 WL 1834257 (5th Cir. May 12, 2011). Under TEFRA, however, courts do not have subject matter jurisdiction over a refund attributable to partnership items. 26 U.S.C. § 7422. The Court therefore must determine whether Plaintiffs' statute of limitations claim seeks a refund attributable to partnership items; if it does, the Court does not have subject matter jurisdiction to consider it.

Section 6501(a) of Internal Revenue Code (the "Code") provides that, "[e]xcept as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." 26 U.S.C. § 6501(a). Section

6501(n)(2) of the Code provides, "[f]or extension of period in the case of partnership items (as defined in section 6231(a)(3)), see Section 6229." Section 6501(n)(2) was added to the Code as part of Section 402 of TEFRA; the language of 6501(n)(2) makes clear that Congress intended the statute of limitations for partnership items to be governed by the relevant provisions in Sections 6501 *and* 6229 of the Code. *See Matthews v. United States*, 2010 WL 2305750, at *4 (S.D. Tex. June 8, 2010), *aff'd sub nom. Scott v. United States*, 2011 WL 1834257 (5th Cir. May 12, 2011). Section 6229(a) of Title 26 of the United States Code provides:

> (a)   General Rule.—Except as otherwise provided in this section, the period of assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of—
>
>  (1) the date on which the partnership return for such taxable year was filed, or
>
>  (2) the last day for filing such return for such year (determined without regard to extensions).

As the Federal Circuit has explained, "[w]hen an assessment of tax involves a partnership item or an affected item, section 6229 can extend the time period that the IRS otherwise has available under section 6501 to make that assessment." *Prati v. United States*, 603 F.3d 1301, 1307 (Fed. Cir. 2010), *cert. denied*, 79 USLW 3301 (Jan. 10, 2011). In *Weiner v. United States*, the Fifth Circuit held that district courts lack jurisdiction to consider a taxpayer's Section 6229(a) statute of limitations argument in a refund suit, because the Section 6229(a) limitations period is a partnership item over which district courts have no jurisdiction. *Weiner*, 389 F.3d at 157. The Federal Circuit reached the same conclusion in *Keener v. United States*, 551 F.3d 1358, 1363 (Fed. Cir.), *cert. denied*, --- U.S. ---, 130 S. Ct. 153 (2009).

Plaintiffs Irvine and White attempt to distinguish this case from *Weiner*, and thus to avoid the conclusion that this Court is jurisdictionally barred from considering their claims, in two ways: First, Plaintiffs Irvine and White argue that their Forms 870-P(AD) settled all partnership items, converting them to nonpartnership items. Because Section 7422(h) bars this Court's refund jurisdiction only over claims seeking a refund attributable to partnership items, *Alexander v. United States*, 44 F.3d 328, 331 (5th Cir. 1995), Plaintiffs contend that this settlement and conversion precludes the jurisdictional bar. Alternatively, Plaintiffs Irvine and White argue that Section 6229(a) cannot be asserted in this case, and that therefore there are no partnership items depriving the Court of jurisdiction. The Court considers each of these arguments below.

### 1. Whether Plaintiffs' Forms 870-P(AD) settled all partnership items, converting them to nonpartnership items

Plaintiffs Irvine and White first contend that their forms 870-P(AD) settled and converted all of their partnership items. If Plaintiffs are correct, then every partnership item element of the IRS's limitations deadline to assess became a converted nonpartnership item. If this happened, Plaintiffs contend, they would be claiming refunds attributable to nonpartnership items, as to which Section 7422 cannot bar jurisdiction. *Alexander*, 44 F.3d at 331. The Court in *Weiner* considered a similar argument. In that case, the Fifth Circuit explained:

> Although a partner's settlement agreement with the IRS converts partnership items to nonpartnership items and thereby lifts § 7422(h)'s jurisdictional bar, the conversion did not occur in this case. The Code provides that only those partnership items encompassed by the settlement agreement are converted to nonpartnership items. . . . Section 6229(a) was not mentioned in the taxpayers' settlement agreements and thus may not be considered a converted item.

389 F.3d at 156 n.2 (citations omitted). Following the approach in *Weiner*, the Court must look to Plaintiffs' settlement agreements to determine whether such a conversion occurred in this case. Plaintiffs urge that in contrast to *Weiner*, all partnership items at issue in this case *were* encompassed by the settlement.

Plaintiffs admit that, as in *Weiner*, Section 6229(a) was not mentioned in their settlement agreements. (*See, e.g.*, White's Settlement Agreement, Doc. No. 1-4 at 8-9.) Nonetheless, they argue that the parties "intended the [settlement] to comprehensively settle all of the settling partners' partnership items for that partnership and tax year." (Doc. No. 22 at 20.) In support of this contention, Plaintiffs point to what they contend was an admission by the government of the IRS's intent to settle all partnership items.

Plaintiffs contend that an argument made by the United States before the district court in the *Matthews* litigation—specifically, the government's statement that the AMCOR-related Forms 870-P(AD) were "a comprehensive and final settlement" of all of the settling partner's partnership claims—indicates the IRS's intent to settle all partnership items. (Case No. 4:00-cv-04131, Doc. No. 29 at 3 ("The United States concedes that *Alexander v. United States*, a Fifth Circuit decision, is controlling here. As such, and despite the IRS's intent that the settlement agreements in this case would represent a comprehensive and final settlement, the United States will not argue that plaintiffs' execution of the settlement agreement with the Internal Revenue Service precludes their argument regarding the statute of limitations.").) *Alexander v. United States*, 44 F.3d 328, 331 (5th Cir. 1995), held that, if a partner files an action for a refund attributable to partnership items, but those items have been converted through a settlement agreement, the jurisdictional bar of Section 7422(h) no longer applies.

The United States offers a number of responses as to why the government's statement in *Matthews* cannot be read to mean that Section 6229(a) was settled. In particular, the government argues that: (1) not long after conceding that *Alexander* applied, the government in *Matthews* retracted that position in a brief submitted to the court (Doc. No. 38-3 at 1 n.2); (2) despite the attorney's statement in *Matthews*, the court in *Matthews* held that it did not have jurisdiction to consider the taxpayer's statute of limitations argument, indicating that the court disagreed with the government's characterization of the settlement; and (3) the government's original position that *Alexander* controlled was later rejected by the Fifth Circuit in *Weiner* on nearly identical facts.

After examining the record, the Court concludes that the government's passing statement in *Matthews* was not a statement of fact to which it now must be bound. *Okwedy v. New York*, 195 F. App'x 7, 9 (2d Cir. 2006) (statements of legal theories, rather than facts, cannot be binding judicial admissions). More importantly, though, the statement evidently was rejected by the *Matthews* court itself, as that court concluded that it did not have jurisdiction to consider the plaintiffs' statute of limitations argument, in light of the government's assertion of Section 6229(a) as a basis to extend the statute of limitations. *Matthews v. United States*, 2010 WL 2305750, at *4 (S.D. Tex. June 8, 2010) *aff'd sub nom. Scott v. United States*, 437 Fed. App'x 281 (5th Cir. 2011). This Court certainly cannot attribute more significance to the government's statement in *Matthews* than was attributed to it by the *Matthews* court itself. Thus, the Court does not read the government's statement in *Matthews* to mean that Section 6229(a) is a converted item.

As a result, Plaintiff's statute of limitations argument is identical to that asserted in *Weiner*. The result, too, must be the same. Because Plaintiffs' statute of limitations claim requires the Court to determine whether extensions under Section 6229 apply, which, in turn, requires the Court to make determinations of partnership items, the Court lacks jurisdiction under Section 7422(h) to consider this claim.[5]

### 2. Whether Plaintiffs' request necessarily involves Section 6229(a)

Plaintiffs contend that, even if the Court concludes that Plaintiffs Irvine and White did not settle all partnership items, this case is still distinguishable from *Weiner* because it does not require the determination of Section 6229(a). Plaintiffs point to the Fifth Circuit's opinion in *Curr-Spec Partners, L.P. v. Commissioner*, 579 F.3d 391 (5th Cir. 2009), which post-dates *Weiner* and directly addresses Section 6229(a). *Curr-Spec* clarifies that Section 6229(a) "establishes only the *minimum* time period that, when necessary, extends, i.e., supercedes, the general three-year limitations period of IRC § 6501(a)." 579 F.3d at 396.

Plaintiffs read *Curr-Spec* as a limitation on the statutory basis on which they can assert their statute of limitations claim. Plaintiffs urge that "[a]fter *Curr-Spec*, even if they tried, Irvine and White could not assert § 6229(a) or any § 6229-based extension of the § 6229(a) period as a defense to untimely assessment." (Doc. No. 22 at 14.) They conclude that, because they cannot raise a Section 6229 claim, their statue of limitations argument is neither governed nor barred by *Weiner*.

Plaintiff's argument is unavailing. Indeed, a nearly identical argument was advanced, and rejected, by the court in *Matthews*. In *Matthews*, the court addressed the

---

[5] This holding is consistent not only with *Matthews*, 2010 WL 2305750, but also with *Rowland v. United States*, 2011 WL 2516170 (N.D. Tex. Jun 22, 2011).

plaintiffs' argument that "*Weiner* does not apply because *Weiner* involved a § 6229(a) limitations argument and [the plaintiff] in this case is asserting a § 6501 limitations argument." 2010 WL 2305750, at *4 (S.D. Tex. June 8, 2010), *aff'd sub nom. Scott v. United States*, 2011 WL 1834257 (5th Cir. May 12, 2011). The court in *Matthews* cited to a recent opinion from the Federal Circuit, which held that Sections 6501 and 6229(a) "do not operate independently to allow a taxpayer to assert one in isolation and thereby render an otherwise timely assessment untimely." *Id.* (quoting *Prati v. United States*, 603 F.3d 1301, 1307 (Fed. Cir. 2010) (internal quotation marks omitted). The *Prati* court's conclusion, adopted in *Matthews*, was that Section 7422(h) "bars consideration of a taxpayer's 6501 limitations issue in a refund proceeding where, as here, the United States asserts § 6229(a) as a basis to extend the statute of limitations." *Id.* (citing *Prati*, 603. F.3d at 1307). *Matthews* is directly on point here. Even if, as Plaintiffs contend, "[t]he government cannot meet and has not met its burden to prove any extension of or exception to their § 6501(a) deadlines," (Doc. No. 39 at 25), the Court cannot rule on this issue. Once the government asserts a Section 6229(a) extension, the Court has no jurisdiction to consider the matter.[6]

### B. Cross-Motions for Summary Judgment on Penalty Interest Under Former 26 U.S.C. § 6621(c)

Plaintiffs' second motion for summary judgment asks the Court to find that the penalties assessed against Plaintiffs Irvine, White, and Kraemer pursuant to Section 6621(c) were improper and must be refunded. Defendant's Motion for Summary Judgment asks the Court to find that it lacks subject matter jurisdiction over this claim.

---

[6] Plaintiffs' frustration is understandable if, as they contend, they are correct on the merits. However, the Court finds it appropriate to follow the precedent set by the cases cited herein, under which the Court is jurisdictionally precluded from reaching the merits of the parties' competing arguments.

Section 6621(c) imposes an interest rate of 120% of the statutory rate on "any substantial underpayment attributable to tax motivated transactions" ("TMTs"). 26 U.S.C. § 6621(c). "Substantial underpayment" is defined as any underpayment exceeding $1,000 per tax year. *Id.* "Attributable to" is read narrowly, such that, if more than one ground is given for disallowing a specific dollar amount of deductions, then Section 6621(c) may be imposed only if every one of the grounds is itself a TMT. Temp. Treas. Reg. § 301.6621-2T, A-5; *see also Weiner*, 389 F.3d at 162. "Included in the statutory definition of 'tax motivated transaction' is 'any sham or fraudulent transaction.'" *Weiner*, 389 F.3d at 159 (citing 26 U.S.C. § 6621(c)(3)(A)(v)). The Fifth Circuit has acknowledged the severity of Section 6621(c) penalties, noting that, "[d]espite its repeal in 1989, the draconian interest provision enacted as § 6221(c) continues to dog taxpayers for returns filed during the early 1980s." *Weiner*, 389 F.3d at 159. Although Section 6621(c) was repealed, the effect of the repeal is not retroactive. Thus, the IRS can still impose Section 6621(c) interest on any tax for pre-1990 tax years that is "attributable to" a TMT. *Id.*

In *Weiner*, the Fifth Circuit considered whether there had been a prior TMT determination binding on those partners that had settled with the IRS. 389 F.3d at 159-62. The court concluded, as a matter of law, that there had not been a prior TMT determination binding on the settled partners, and that, consequently, the penalty interest paid by those partners had to be refunded. *Id.* In *Duffie*, the Fifth Circuit considered whether such a binding determination had been made as to *unsettled* partners in AMCOR partnerships. 600 F.3d at 372-80. The court in *Duffie* found that there had been a prior TMT determination as to the unsettled partners; the court looked to the partnership-level

decision in the Tax Court, which had found that the partnership's transactions were "shams" (a listed TMT), and concluded that such a determination was binding on the unsettled partners. 600 F.3d at 375-79.

After concluding that there had been a prior TMT determination, the court in *Duffie* then addressed whether the unsettled partners could challenge that prior determination. It held that, although the question of whether a binding TMT determination was previously made is an affected item (and not a partnership item), "[t]he nature of a partnership's transactions—whether they are a sham—is the *partnership item* component of assessing Section 6621(c) interest." 600 F.3d at 376 (citing *Keener v. United States*, 76 Fed. Cl. 455, 469 (Fed. Cl. 2007)) (emphasis added). Because a "sham" determination was a partnership item element of the *Duffie* plaintiffs' Section 6621(c) claim, the court concluded that Section 7422(h) deprived it of jurisdiction to consider the claim, which sought re-determination of a prior partnership-level sham determination. *Id.*

In sum, the IRS may impose Section 6621(c) penalty interest only on tax previously determined to be attributable to a TMT listed in Section 6621(c)(3)(A) or Temp. Treas. Reg. § 301.6621-2T. Plaintiffs contend that the Court has jurisdiction to consider whether a binding TMT determination has been made, *Duffie*, 600 F.3d at 376, and must find that it has not, as this case is factually indistinguishable from *Weiner*. The government "does not contest that *Weiner* addressed facts that were essentially the same as those here," but instead urges that the Fifth Circuit did not address "the issue of the Court's jurisdiction to address section 6621(c) interest, which, being an affected item, has both partnership and partner components." (Doc. No. 26 at 5.) Thus, instead of

attempting to distinguish this case from *Weiner* on its facts, the United States urges that *Weiner* does not control because it merely accepted, without analysis, that it had jurisdiction. The government contends that this Court has no jurisdiction even to recognize that no TMT determination was made in this case.

The government argues that, in *Duffie*, the Fifth Circuit answered the jurisdictional question that it had ignored in *Weiner*, and concluded that it did not have jurisdiction to consider a penalty interest claim. In making such an argument, the government misreads both *Weiner* and *Duffie*. Because *Weiner* considered settled partners and *Duffie* unsettled partners, the courts in each case looked different places to determine whether a TMT determination had been made. Moreover, although *Weiner* did not speak to the jurisdictional issue directly, the issue was before the court, as both of the district court opinions on appeal in *Weiner* expressly held that they had jurisdiction over the penalty interest claims. *See Kraemer v. United States*, 2002 WL 575791, at *13 (S.D. Tex. Feb. 13, 2002) ("[T]his court has jurisdiction to consider whether the IRS's assessment of the 26 U.S.C. § 6621(c) interest, a nonpartnership item, was correct."); *Weiner v. United Sates*, 255 F. Supp. 2d 624, 656-57 (S.D. Tex. Nov. 20, 2002) (finding that the court had jurisdiction over the Section 6621(c) issues). More importantly, while the Fifth Circuit in *Weiner* did not expressly conclude that it had jurisdiction over the Section 6621(c) claims, it did find that it lacked jurisdiction to consider the plaintiffs' statute of limitations claim. Thus, the court clearly was aware of and concerned with Section 7422's jurisdictional bar, and applied it to another claim at issue in the case. Finally, that courts are obligated to consider jurisdictional questions *sua sponte* only

17

confirms that, in this case, the Fifth Circuit did find (although it did not do so explicitly) that it had the jurisdiction to consider the plaintiffs' penalty interest claim.

Applying *Weiner*, the Court concludes that it has jurisdiction to consider whether a binding TMT determination was made as to the Plaintiffs. The government has admitted that the facts in *Weiner* are substantively identical to those in this case. Thus, for the reasons discussed in *Weiner*, 389 F.3d at 159-163, the Court concludes that the Plaintiffs' underpayments are not "attributable to" a TMT as a matter of law, and that the government therefore failed to establish the required TMT predicate to impose Section 6621(c) penalty interest.

### III.    CONCLUSION

For the reasons discussed herein, the Court concludes that Defendant's motion must be **GRANTED IN PART** and **DENIED IN PART**. As to Plaintiffs' claim based on untimely assessment under 26 U.S.C. § 6501(a), Defendant's motion must be **GRANTED**, and Plaintiffs' motion must be **DENIED**. As to Plaintiffs' claim regarding penalty interest under 26 U.S.C. § 6621(c), Plaintiffs' motion must be **GRANTED**, and Defendant's motion must be **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this 27th day of April, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE